WELLMAN *v.* O'CONNOR-MARTIN CO.

1. SALES—CONTRACTS—CONSTRUCTION—PAROL EVIDENCE.

Under a written contract of sale of beans, specifying kind, color, condition, fixing the number of bags to a car load at 250, and a car load at 40,000 pounds, or 666 2/3 bushels; terms $2.30 for 58 pounds, allowing seven cents per bushel for each pound of waste and requiring payment of sight draft attached to the bill of lading on arrival and examination, plaintiff had the right to make an actual pick of the beans to determine the amount of waste; testimony of one of defendant's witnesses that the buyer agreed at the time of executing the contract that defendant should take a handful from each bag and the waste from the samples should determine the pick, was inadmissible to vary or add to the writing which was not ambiguous or uncertain.

2. SAME—TERMS—QUANTITY.

The provision of the contract that 250 bags should constitute a car load, or 40,000 pounds, was also controlling as to the number of pounds to the bag, in the absence of agreement or usage to the contrary.

3. APPEAL AND ERROR—FINDINGS OF FACT—TRIAL.

Testimony fixing the price of beans of the quality of those sold at varying prices from $2.25 to $3.25 per bushel, presented a question of fact as to the market price, and supported findings of the trial court that the value was $2.65 per bushel, so that this court cannot review them.

4. AMENDMENT—CONTINUANCE—SET-OFF.

It was not error, under the liberal rule permitting amendments in this State, to allow the defendant, at the trial of an action of assumpsit, to amend its plea by adding a notice of set-off, at the same time granting to the plaintiff ample time by way of an adjournment, during which to prepare to meet the defense: the matter was discretionary with the trial court.

5. PLEADING—SET-OFF—NOTICE—RECOUPMENT—ERROR.

The allowance of a set-off, in an action for nondelivery of certain beans, although technically incorrect because the claim of defendant was unliquidated, was not ground for reversal, where the plaintiff did not raise the point until after the court filed its findings and entered judgment, an amendment of the notice being open to defendant to change its notice to recoupment.

6. SALES—DAMAGES—ESTIMATED WASTE.

The trial court also committed error in finding that the beans which were undelivered would contain three pounds of waste to the bushel, although there was not any basis in the testimony for such a finding: plaintiff was entitled to recover for failure of the defendant to deliver the entire quantity of beans which it failed to tender pursuant to the contract of sale. No estimate should have been made for an average waste per bushel.

Error to Muskegon; Sullivan, J. Submitted November 17, 1913. (Docket No. 138.) Decided March 26, 1914.

Assumpsit by Ernest L. Wellman against the O'Connor-Martin Company for nondelivery of a

quantity of beans purchased by plaintiff. Judgment for defendant on its amended notice of set-off. Plaintiff brings error. Reversed.

*Rodgers & Rodgers,* for appellant.

*Cross, Vanderwerp, Foote & Ross,* for appellee.

STONE, J. This action was in assumpsit and was brought to recover damages for the nondelivery of a quantity of hand-picked red kidney beans.

The plaintiff was a dealer in beans at Grand Rapids, Mich. The defendant corporation was a dealer in beans at Holton, Mich. On April 10, 1911, the plaintiff entered into three written contracts with the defendant company, whereby plaintiff agreed to buy, and defendant agreed to sell 2,500 bags of choice hand-picked red kidney beans. These contracts were on blanks known as "Official Seller's Contract," adpoted by the Michigan Bean Jobbers' Association. The time of delivery was specified as October in one contract, and not later than November 15th in the other two. The price in all three contracts was $2.30 per bushel.

On April 21, 1911, plaintiff and defendant entered into another written contract for 1,250 bags of the same kind of beans, on the same kind of a blank, containing stipulations identical with the former contracts, except that the price in this latter contract was $2.25 per bushel. One of the first contracts is given here as a sample of all of them, and, except as to quantity and prices, reads as follows:

"Official Sales Contract.
"GRAND RAPIDS, MICH.
"O'Connor-Martin Co., of Holton, Mich., has this day sold to E. L. Wellman, of Grand Rapids, Mich., 500 bags choice H. P. red kidney beans, $2.30, 58 lb., seven cents per bushel off for each pound they waste to the bushel, f. o. b. Holton.

"Shipment by November fifteenth, 1911. Cotton bags included (gross weight as net).

"Weight guaranteed to within ¼ of 1 per cent., obvious errors excepted.

"Terms: Draft with B. L. payable on arrival and examination of goods.

"If for any reason quality is claimed not as sold, matters shall be submitted to arbitration in the usual · way. Grading of Michigan Bean Jobbers' Association to govern, or seller has right to deliver other goods.

[Signed] "E. L. Wellman, Purchaser.
"O'Connor-Martin Co., Seller.

"In case it is necessary to submit to arbitration a fee of $1.00 for inspection must be sent with sample to cover cost of same, to be paid, before a certificate is issued, by party asking inspection.

'E. W. Burkhart, Chairman Arbitration Committee,
"Fowlerville, Mich."

And on the other side the only thing relating to the beans covered by this contract is as follows:

"Choice hand-picked Michigan red kidney beans must be light red in color, bright, sound, dry, well screened and must not contain more than one and one-half per cent. of discolored and split beans, and not more than two per cent. of sports or blue beans.

"A car load of beans, unless otherwise specified, shall consist of 250 bags, and a minimum car is 40,000 lbs., or 666 2/3 bushels.

"Immediate shipment is shipment in three days; quick shipment is shipment in five days; prompt shipment is shipment in ten days. Time is to count from the time of receiving complete shipping instructions, not including day of sale, Sundays or holidays, at place of shipment."

On the margin of which said contract is indorsed:

"Adopted by the Michigan Bean Jobbers' Association annual session held at Lansing, October 5, 1897; reaffirmed Detroit, September 11, 1901; reaffirmed September 13, 1905; revised September 4, 1906."

It will be seen that the four contracts aggregated

3,750 bags of beans, which at 250 bags to the car, called for 15 cars of beans of the minimum weight of 40,000 pounds.

Defendant was instructed by plaintiff to ship the beans to a Mr. Reamer at Cedar Springs, Mich., in order that they might be picked and put in marketable condition at his elevator. Defendant commenced shipping under these contracts October 30, 1911, and continued until January 2, 1912, during which time it had shipped 10 cars, which defendant claimed contained 40,020 pounds of beans each, but which, when weighed in at the elevator, averaged slightly less than 40,000 pounds each.

During the first half of November defendant notified plaintiff that it would not be able to fill all of its contracts. Plaintiff thereupon, and on November 14, 1911, bought from the Wabash Canning Company four cars of choice hand-picked red kidney beans which that company had contracted from a Michigan dealer. The plaintiff paid for these beans $3.05 per bushel; and the plaintiff produced testimony tending to show that the market price of such beans, f. o. b. any common Michigan point (such as Holton)', at that time was from $2.90 to $3.25 per bushel.

The declaration was filed June 4, 1912, to recover damages for the 1,250 bags (5 cars) of beans undelivered. The defendant invoiced the 10 cars shipped at $2.30 per bushel, being the price stipulated in the first three contracts for the 2,500 bags of beans made April 10th. The plaintiff therefore claims that the undelivered beans were under the contract of April 21st, and their price was $2.25 per bushel.

The case came on for trial before the trial judge without a jury, on February 11, 1913. The four contracts were offered in evidence. The delivery of the ten cars and their weights were proven, as well as the nondelivery of the five cars, with evidence tending to show the market price of the beans in car lots

at the time and place of the agreed delivery to be $3.10 to $3.18.

Defendant introduced evidence tending to show that the market price of such beans, based on purchases of small quantities from the farmers, was from $2.25 to $2.40 per bushel. The defendant then offered to prove the amounts that had been paid it for the beans which were delivered. This was objected to by plaintiff's counsel as not in issue under the pleadings. The court thereupon granted defendant leave to file a notice of set-off and a bill of particulars of the same, and refused to grant plaintiff a continuance of the case over the term, but postponed the further trial of the case until February 19, 1913. To this ruling plaintiff objected and took exception. The trial was resumed at the last-named date. It appeared that defendant had taken a sample of these beans from each car and picked the sample. From this it estimated the pick of the whole car. It claimed that the price of these beans was to be determined by this estimated pick; that is, that the number of pounds of waste, for which seven cents per pound was to be deducted, was to be determined by the estimated pick. It claimed this by virtue of an alleged conversation between Herbert O'Connor and plaintiff at the time the contracts were executed, which conversation was received in evidence over plaintiff's objection and exception, and was denied by plaintiff. The defendant sent plaintiff an invoice of each car showing the amount of beans in the car, their price at $2.30 per bushel, the estimated pick, the amount to be deducted for the pick, and the balance, and drew a draft for 90 per cent. of the balance. Plaintiff testified that the 10 per cent. margin was to cover any difference between the estimated pick and the actual pick. The defendant gave evidence tending to show that it was to cover the price of the bags which plaintiff had furnished defendant.

It appeared upon the trial that on December 30, 1911, after nine cars had been shipped, defendant sent plaintiff a check for $504, which was the full price of all bags furnished. Every draft that was drawn on plaintiff for the cars of beans shipped by defendant was paid in full.

There was evidence tending to show that it was the custom of the bean trade, when buying from farmers in small quantities, to determine the amount of waste by an estimated pick; the sample being picked by the purchaser. There was also evidence tending to show that, in buying from a dealer in car lots, it was the custom among the bean trade to determine the amount of waste by an actual pick when the beans were run through an elevator.

The court filed findings of fact in which it found that the defendant had contracted to furnish plaintiff 3,750 bags of beans. It further found that defendant delivered 2,760 bags of beans. There was evidence showing that there were 145 pounds of beans, net, put in each of the bags by virtue of instructions of Mr. Martin of defendant company, instead of 160 pounds as stated on the back of the contract. The court therefore concluded that there were 990 bags undelivered, and assumed that these bags should each contain 145 pounds of beans net. Reducing this to bushels, the court found that there were 2,475 bushels of beans undelivered. Instead of taking either of the prices testified to at the time fixed for delivery, the court allowed $2.65 per bushel, and found that to be the market price of the beans at the time and place of delivery, and assessed the damage of plaintiff by reason of failure to deliver the beans contracted for at $990. The court then allowed defendant's set-off, and found that the estimated pick of the beans by defendant, rather than the actual pick at the elevator, should control the amount of deduction to be allowed at the rate of seven cents off

"for each pound they waste to the bushel." In this finding the court charged plaintiff with 1,250 bags of beans, which it computed as 3,129.30 bushels, at $2.30 per bushel. The court charged plaintiff with 1,510 bags of beans, computed as 3,801 bushels and 2 pounds, at $2.25 per bushel. Upon this computation it found the total gross price to be $15,749.69. The court allowed deductions at the rate of 7 cents per pound for waste, based on defendant's estimated pick ranging from 2 to 6 pounds to the bushel, aggregating $1,400.70. The court further allowed credit for payments made, aggregating $12,917.18. From this the balance found to be due defendant for beans delivered was $1,431.81. Deducting the $990 due plaintiff for failure to deliver the balance of the beans, there was found to be due the defendant the sum of $441.81, which, with interest from November 15, 1911, amounted to $470.04, for which judgment was entered in favor of defendant against the plaintiff.

The plaintiff proposed amendments to these findings of fact and conclusions of law, which amendments were denied by the court. Plaintiff thereupon filed exceptions in detail to the findings of fact and conclusions of law and to the refusal to find the facts and law as proposed by him. A bill of exceptions was settled, and the cause has been removed to this court by the plaintiff by writ of error.

1. The first question discussed by appellant and raised by the assignments of error is whether an actual pick or an estimated pick should, under the contract, govern the deduction for waste. It is urged by appellant that the trial court erred in permitting the witness Herbert O'Connor of the defendant company to testify that it was agreed between himself and plaintiff, when the written contracts were executed, that the men who filled the cars should take

178 MICH.—44.

a handful out of each bag and put it in a basket and take a pick from those, and that such pick would give the exact pick of the car, and should determine the pick. Also because the court found that the price of the beans was to be determined on the basis of this estimated pick, and refused to base the price on the actual pick as the beans were run through the elevator.

Not only was the contract for the sale of choice hand-picked red kidney beans at $2.30 per bushel of 58 pounds, but it also provided there should be "7 cents per bushel off for each pound they waste to the bushel." Were it not for this clause, it might be said that the trial court did not err in its basis, but the entire written contract must be construed together, and it must be borne in mind that the contract also contained the following language: "Terms: Draft with B. L. payable on arrival and examination of goods." Under this contract, in our opinion, the plaintiff had the right, when these beans were received by him at Cedar Springs, to make an examination and actual pick of the beans, to determine the number of pounds they wasted to the bushel. We think that under the written contract it was contemplated that the beans must be hand-picked before they were marketable. The contract price was the price of hand-picked beans. There was undisputed evidence that of this 7 cents per bushel 3½ cents were paid the girls for picking the beans and 3½ cents were for the value of the beans to take the place of the waste. We think that the contract provided that the beans should be actually hand-picked. There is nothing uncertain or indefinite on this subject in the written contract. It provided for the delivery of a certain quantity of beans for a certain price per bushel, but provides that 7 cents should be deducted from this price per bushel for each pound they wasted to the bushel. We are of the opinion that the

testimony of Herbert O'Connor was inadmissible because it tended to contradict and vary the terms of the written contract. The rule is too familiar, to need reference to authorities, that contemporaneous parol evidence is inadmissible to alter or vary the terms of a valid written instrument. We think that the court erred in making the estimated pick the basis of the plaintiff's recovery. This made a difference in the amount due the plaintiff of a large sum, for it appeared that there were in the ten cars of beans an actual waste of 33,816 pounds. From the pick of the sample by defendant, it was estimated that the waste would be 20,010 pounds. At 7 cents per pound, the deduction from the contract price for the actual waste of 33,816 pounds would be $2,367.12. The deduction for the estimated weight of 20,010 pounds was $1,400.70, a difference of $966.42. We think this ruling and finding of the trial court constituted reversible error.

2. The next subject discussed by appellant is whether a bag of beans under this contract means 160 pounds or 146 pounds. In our opinion a bag of beans, under this contract, means 160 pounds. There is nothing in the record showing any other agreement, custom, or understanding. Upon the trial of the case the trial court, quoting from the contract, said:

"'A car load of beans, unless otherwise specified, shall consist of 250 bags, and a minimum car is of 40,000 pounds or 666 2/3 bushels.' Now it looks to me as if 250 bags into 40,000 pounds would give the number of pounds there would be in a bag, and that that was the intention. We will take the whole contract together. That would be 160 pounds to the bag."

We think the trial court was correct in this statement, and that it erred when it departed from it in its findings.

3. The next group of assignments of error discussed by appellant relates to the value or price of choice hand-picked beans on November 15, 1911. Upon this subject a question of fact was presented. As we have already stated, there was testimony varying from $2.25 to $3.25 per bushel. The price or value claimed by the bill of particulars was $3.10 per bushel. The trial court, under the testimony, fixed the price of value at the mean sum of $2.65 per bushel. We do not understand that this part of the finding raises any question of law which we can consider.

4. The next subject urged as error by the appellant is that the court erred in permitting defendant to file a plea of set-off, and in refusing to grant plaintiff a continuance. We have already stated what the facts were, and, it appearing that ample time was given for the preparation for trial of the new issue injected into the case by the notice of set-off and bill of particulars filed in pursuance thereof, the whole subject rested in the sound discretion of the court, and, under our liberal rules permitting amendments, we cannot say that there was any abuse of discretion.

5. It is next urged that the court erred in allowing the defendant's set-off. It is complained by appellant that a set-off was not proper in the case; that, the claim of the plaintiff being for unliquidated damages, no set-off should have been allowed. A careful examination of the record discloses that, after interposing the notice of set-off, the testimony on the part of defendant in support thereof was received without objection or exception. The attention of the trial court does not appear to have been called to the point that a set-off was not appropriate, until after the findings had been filed and the judgment entered on the 21st day of June, 1913. It appears that on June 24, 1913, the plaintiff, by his proposed findings

of fact and conclusions of law, raised this question. Undoubtedly correct practice would require this defense to have been introduced under a proper notice of recoupment, as a defense springing out of the same contract upon which the plaintiff sued for unliquidated damages. As the question is here presented, we should not reverse the case for this reason. As the case must go back for a new trial, undoubtedly the trial court will permit such an amendment in that regard as justice may require.

6. The fourteenth assignment of error complains of the sixth finding of fact, which was as follows:

"According to the contracts 3,750 bags were to be delivered, and there were delivered 2,760 bags, which leaves 990 bags undelivered, to weigh 145 pounds each, or in all 143,550 pounds, or 2,475 bushels at 58 pounds per bushel. And the gross price of 2,475 bushels at $2.25 per bushel would be $5,568.75. I estimate the average waste to be 3 pounds to the bushel, or 7,425 pounds, at 7 cents, would be $519.75, or a total net price of $5,049."

In our opinion there was no basis in the evidence for a computation by the trial court of an average waste of 3 pounds to the bushel, or of any other amount. The defendant having failed to perform its contract in that regard, the plaintiff was entitled to recover his damages for the nondelivery of the shortage of choice hand-picked red kidney beans. We think there was error in allowing any estimated waste, or any waste, upon the quantity not delivered, under the contract.

We find no other errors necessary to be considered; but, for the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.